**In re BELIZE AIRWAYS LIMITED, Debtor.**

**William D. SEIDLE, Trustee, Plaintiff,**

**v.**

**PAN AMERICAN WORLD AIRWAYS, INC., Defendant.**

**PAN AMERICAN WORLD AIRWAYS, INC., Plaintiff,**

**v.**

**BELIZE AIRWAYS LIMITED, Defendant.**

**Bankruptcy No. 80–00199–BKC–SMW. Adv. Proceeding Nos. 80–0078–BKC–SMW–A, 80–0094–BKC–SMW–A.**

United States Bankruptcy Court, S. D. Florida.

June 26, 1980.

Timothy J. Norris, Miami, Fla.,

J. Micheal Nifong, Miami, Fla., for the defendant.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THESE MATTERS were tried by the Court on April 27, 1980. Pursuant to the stipulation of counsel, the Court has considered the evidence presented before it on March 21, 1980, at a hearing involving many of the same factual and legal issues presented herein. The Court having heard the testimony and examined the evidence presented, having observed the candor and demeanor of the witnesses, having considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law.

On April 16, 1980, William D. Seidle, the Trustee for the estate of Belize Airways Limited, Debtor (hereinafter "BAL"), filed an adversary proceeding to determine the extent of Pan American World Airways, Inc.'s (hereinafter "Pan Am") interest in property and for declaratory relief. On April 22, 1980, Pan Am filed an adversary proceeding against the Trustee and BAL seeking relief from the automatic stay provided by § 362 of the Bankruptcy Code in order to proceed with a pending eviction action in state court to recover possession of premises subleased by Pan Am to BAL or, in the alternative, for a declaration that the sublease had terminated. In addition, on May 2, 1980, the Trustee served its decision to assume the sublease, subject to the approval of this Court. Because the legal and factual issues are basically the same for each adversary proceeding and for the approval of the assumption, this Court, like the parties, is considering them together.

This Court has jurisdiction of this case under 28 U.S.C. § 1471(a) and has jurisdiction of the adversary proceedings under 28 U.S.C. § 1471(b).

BAL is a corporation organized under the laws of Belize, a British colony, with substantial assets located in the United States, primarily at Miami International Airport. BAL conducted scheduled passenger and

cargo air service between Miami and points in Central America until its last remaining aircraft were seized by court process at the instance of creditors. A creditor's petition was filed against BAL on February 25, 1980, and BAL consented to the entry of an order for relief under Chapter 11 of the Bankruptcy Code. Thereafter, on April 4, 1980, William D. Seidle was appointed as Trustee for the estate of BAL. Since the institution of these proceedings, Pan Am has attempted to obtain the determination of this Court that the sublease could not be assumed by BAL or by the Trustee. For the reasons set forth below, this Court has concluded that the sublease has not been terminated, that relief from the automatic stay should not be granted, and that the Trustee's assumption of the sublease should be approved.

Pan Am is the lessee of property at Miami International Airport pursuant to a Lease Agreement dated April 1, 1962, between Pan Am and the Dade County Port Authority. On November 1, 1977, Pan Am entered into an Agreement of Sublease with BAL which subleased to BAL a hangar facility commonly called Hangar 8 and adjacent spaces for the parking of aircraft. By the end of 1979, BAL was behind in its rental payments to Pan Am, and on January 22, 1980, Pan Am delivered to BAL a letter stating that the Agreement of Sublease was terminated as of February 12, 1980; this letter did not give BAL any grace period within which to cure any existing defaults but demanded the payment of $60,933.30 in arrears. On February 4, 1980, BAL tendered payment of $60,933.30 on condition that the sublease not be terminated, but Pan Am refused the tender. However, according to the testimony of a Pan Am employee, Pan Am thereafter did accept the payment of the rent for February. On March 4, 1980, a tender of $200,000.00 was made on behalf of BAL to pay the balance due and prepay several months of rent; however, this tender was refused by Pan Am.

During this period of time, and to some extent even through the time of trial, BAL was permitting certain third parties to use a portion of the subleased premises pursuant to business arrangements. Although the Agreement of Sublease provides that BAL can sub-sublease only with the prior consent of Pan Am, the Agreement of Sublease is silent about these business arrangements. However, the evidence clearly shows that Pan Am considered the business arrangements between its sublessors such as BAL and third parties to be different in some way from a sub-sublease and consistently acquiesced in BAL's business arrangements with third parties.

The evidence presented at the trial demonstrated that some airlines are capable of operating without having their own hangars, but in those instances they go elsewhere for certain of the maintenance work required for the aircraft. One of the airlines without hangar facilities did acknowledge that it very much wanted to acquire a hangar so that it could perform full maintenance on its aircraft. And the evidence was undisputed that the current market rental value of Hangar 8 is far in excess of the rate specified in the Agreement of Sublease between Pan Am and BAL.

## EQUITABLE CONSIDERATIONS PROMPT RELIEF IN FAVOR OF BAL

■ Not surprisingly, the Bankruptcy Reform Act of 1978 recognized what has long been acknowledged—that courts of bankruptcy are courts of equity. Public Law 95–598, Sec. 241(a), codified as 28 U.S.C. § 1481. And just as nature abhors a vacuum, equity abhors a forfeiture. The provisions of the Agreement of Sublease invoked by Pan Am in its letter of January 22, 1980, clearly constitute a forfeiture provision, since they provide for the termination of a valuable property interest upon any default, however minor, without the opportunity to cure the default. Here, the provisions were invoked to terminate a leasehold interest worth substantially more than the amount of the rental payments.

The law of Florida, like many other states, disfavors forfeiture clauses in leases.

The Florida Supreme Court, in a case acknowledged and followed often since, has stated the general rule to apply in situations like the one presented here:

> Equity will relieve against the forfeiture of a lease for the non-payment of rent whenever it is just and equitable to do so; the only condition precedent to such relief being the tender of payment of the arrears of rent with accrued interest. *Rader v. Prather*, 100 Fla. 591, 130 So. 15, 17 (1930).

*See also Nevins Drug Co. v. Bunch*, 63 So.2d 329 (Fla.1953); *Brownlee v. Sussman*, 238 So.2d 317 (Fla. 3d DCA 1970); *Fort Walton Square, Inc. v. Purvis*, 177 So.2d 857 (Fla. 1st DCA 1965). The decisions of bankruptcy courts cited by Pan Am are consistent with these principles. *See In re Greco*, 3 B.R. 18, 1 C.B.C.2d 619, 6 B.C.D. 98 (Bkrtcy. M.D.Haw.1980); *In re R. S. Pinellas Motel Partnership*, 2 B.R. 113, 1 C.B.C.2d 349 (Bkrtcy.M.D.Fla.1979).

Pan Am has pointed out that the Trustee has not tendered payment of the past due rent. However, the Trustee hardly can be criticized, since such a tender would be a cure of defaults which can be undertaken only if a trustee assumes a lease, which assumption is subject to court approval. *See* § 365(a) of the Bankruptcy Code. On the contrary, the Trustee would be subject to criticism if he had tendered payment prior to receiving this Court's approval of his assumption of the Agreement of Sublease. Pan Am also has argued that BAL's tender of payment on February 4 and March 4 were not proper tenders since they were accompanied by a condition that eviction proceedings be dropped or that the Agreement of Sublease be recognized to be in force. But those conditions do not make the tender inadequate, since a "tender made subject to a condition upon which the party has the right to insist is a valid tender." *Plank v. Arban*, 241 So.2d 198, 200 (Fla. 4th DCA 1970). Since acceptance of the tender of payment would have cured any defaults, Pan Am would not have been entitled to forfeit the lease, which is all that BAL's conditions sought to have acknowledged by Pan Am.

Accordingly, this Court as a court of equity will not recognize or enforce the forfeiture sought by Pan Am.

## PAN AM WAIVED, OR IS ESTOPPED TO ASSERT, ANY RIGHT TO TERMINATE THE AGREEMENT OF SUBLEASE

Subsequent to Pan Am's January 22, 1980 letter that the Agreement of Sublease was to be considered terminated, Pan Am accepted the rental payment for February, 1980. This acceptance of rent is an alternative basis for concluding that the Agreement of Sublease is not terminated and is subject to assumption by the Trustee. Furthermore, Pan Am has continued to send to BAL or to the Trustee invoices for the payment of rent, thus treating the Agreement of Sublease as still in effect. Under Florida law, the acceptance of rent from the tenant after breach of a lease will estop the landlord from asserting a forfeiture of the lease. *See, e. g., Moskos v. Hand*, 247 So.2d 795 (Fla. 4th DCA 1971). Furthermore, the landlord must clearly evidence his intention to treat a lease as terminated. *See Altiere v. Atlantic Nat'l. Bank of W. Palm Beach*, 168 So.2d 693 (Fla. 2d DCA 1961). Accordingly, this Court will not declare the Agreement of Sublease as terminated.

## THE AUTOMATIC STAY SHOULD NOT BE LIFTED

Pan Am has sought relief from the automatic stay of § 362 of the Bankruptcy Code. Pan Am simply is not entitled to the relief it requests—there is an Agreement of Sublease which is capable of assumption by the Trustee (since it has not been terminated). The Trustee clearly has sought this Court's approval to assume the sublease, and, if he cures the defaults as required by § 365(b), he is entitled to assume the sublease. In such a situation, § 362(d) has no · room to function.

Even if it were appropriate for Pan Am to seek relief under § 362(d), it could not prevail. The assumption of the Agree-

ment of Sublease, conditioned as it will be (as indicated *infra*), will provide adequate protection * to Pan Am. Furthermore, Pan Am has not established that BAL has no equity in the sublease, as is its burden under § 362(g); the uncontradicted evidence is that the sublease is worth substantially more than the agreed rental rate. And it is this value which makes the sublease necessary for an effective reorganization of BAL—the sublease is the one asset of the estate which all parties in interest recognize to have substantial value which can be used to put BAL back on its financial feet.

## THE TRUSTEE MUST CURE DEFAULTS AND PROVIDE ADEQUATE ASSURANCE

■ Pan Am has asserted that it cannot be adequately protected or receive adequate assurance because of numerous defaults under the Agreement of Sublease. However, the evidence establishes that the alleged defaults are not defaults or have been cured already.

Pan Am is estopped from asserting that business arrangements between BAL and third parties are sub-subleases subject to Pan Am's approval. Any such business arrangements are not defaults and thus do not have to be terminated under § 365(b). The insurance which lapsed has been reinstated without a break in coverage, so that default already has been cured. The fire protection service has been paid for by the Trustee for post-petition protection; however, the Trustee must cure the default of the pre-petition obligations for fire protection and related services provided by Allied Maintenance Corporation, which is part of the sublessee's obligations under the Agreement of Sublease.

This Court's approval of the Trustee's assumption of the Agreement of Sublease is conditioned upon the Trustee's payment to Pan Am of all past due and current rental payments within 15 days after the order and judgments entered pursuant to these

findings of fact and conclusions of law become final. The Trustee is required to provide Pan Am with adequate assurance of future performance, and this Court finds that a security deposit of $75,000.00 will provide adequate assurance of future performance—$75,000.00 is approximately three months' rent (base rent plus average miscellaneous charges), and three months should be sufficient time to evict a reorganized BAL if it defaults.

The Court will enter judgments and an order in accordance with these findings of fact and conclusions of law.

---

* In this instance, the "adequate assurance" to be provided pursuant to § 365(b)(1) is "adequate protection" within the meaning of § 361. The full extent of any correlation between "adequate assurance" and "adequate protection" need not be decided now.