### In the Matter of MIAMI DYEING & PRINTING, INC. Arosa Knitting Corporation, Debtors.

### MIAMI DADE INDUSTRIAL PARK, INC., a Florida corporation, Plaintiff,

### v.

### MIAMI DYEING & PRINTING, INC., Debtor/Debtor-in-Possession, Arosa Knitting Corporation, Debtor, and Walter E. Heller & Company, a Delaware corporation, Defendants.

Bankruptcy No. 80–00659–BKC–SMW. Adv. No. 81–0279–BKC–SMW–A.

United States Bankruptcy Court, S. D. Florida.

Nov. 2, 1981.

---

Robert A. Schatzman, Miami, Fla., for Miami Dyeing & Printing, Inc., defendant/debtor and debtor-in-possession.

Irving M. Wolff, Miami, Fla., for plaintiff, Miami Dade Industrial Park, Inc.

Arthur S. Weitzner, Coral Gables, Fla., for trustee of defendant, Arosa Knitting Corp.

John K. Olson, Tampa, Fla., for defendant, Walter E. Heller & Co.

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on to be heard on August 4, 1981 on the adversary action of the Plaintiff, Miami Dade Industrial Park, Inc. (Miami Dade). In its Complaint, Miami Dade sought to terminate a lease agree-

ment (Exhibit B of Miami Dade's Complaint) dated February 15, 1981 with the Debtor-in-Possession, Miami Dyeing & Printing, Inc. (Miami Dyeing), or in the alernative, to obtain a modification of the automatic stay so that Miami Dade could seek to recover possession of the premises in the County Court of Dade County, Florida. The Court having heard the testimony presented at trial, as well as considering the evidence introduced, the argument of counsel, the trial memoranda submitted by counsel, and otherwise being fully advised in the premises, makes the following findings of fact and conclusions of law.

On February 15, 1971, Miami Dade leased the property, which constitutes the subject of the present action, to Arosa Knitting Corporation (Arosa). The lease, as originally executed, was for a period of approximately twelve (12) years, ending on January 31, 1983. Paragraph 13 of the lease provided the tenant with the right to assign the leasehold. Paragraph 28 provided for an option to purchase the leasehold premises on February 1, 1983 for the sum of $265,000.00.

On June 30, 1971, Arosa exercised its rights under the lease and assigned its interest therein to Miami Dyeing (Exhibit C of Miami Dade's Complaint). Miami Dyeing is a firm engaged primarily in the printing and dyeing of fabrics on a contract basis. This assignment was consented to by Miami Dade, who subsequently acknowledged Miami Dyeing to be the assignee and new lessee in an instrument executed assigning its own rights and privileges under the lease to Southeast Mortgage Company (Miami Dyeing's Exhibit A).

Several years after Miami Dyeing took possession under the assignment, an action was instituted by Miami Dade in the County Court, in and for Dade County, Florida, to remove Miami Dyeing as tenant as a result of a one (1) month delinquency in rent payments. The suit was resolved without trial by an Agreed Order (Exhibit F of Miami Dade's Complaint), dated November 28, 1978, which permitted Miami Dyeing to remain in possession under the terms and provisions of the original lease, except that Miami Dyeing became responsible for paying its rent within three (3) business days from the date provided in the lease. The lease was not terminated by the Court Order. The option was not extinguished. Subsequent to the entry of the Court Order, Miami Dade acknowledged Miami Dyeing's right under the lease and in particular its right to exercise the option when it executed an Agreement to Subordinate Mortgage (Miami Dyeing's Exhibit B) in 1979.

During the course of the lease, Miami Dyeing made substantial improvements to the property. A dye house was constructed on the premises at a cost to Miami Dyeing of approximately $225,000.00. This addition comprises 25–33% of the total building space.

On June 2, 1980, Miami Dyeing filed its Petition for Reorganization under Chapter 11 of Title 11 of the United States Code. As a Debtor-in-Possession, Miami Dyeing continued in possession of the leased premises and continued to make timely rent payments to Miami Dade. On April 20, 1981, Miami Dade sent a notice of default to Miami Dyeing, informing Miami Dyeing that the 1980 real estate taxes in the amount of $17,999.17 had not been paid as required by the lease which classified said taxes as rent. The notice gave Miami Dyeing until May 10, 1981 to cure its default. Subsequent to this notice, Miami Dade accepted Miami Dyeing's rent payment for the month of May. Miami Dyeing did not, however, pay the outstanding taxes for May 10, 1981 and on May 14, 1981 Miami Dade went forward and paid the real estate taxes.

Miami Dyeing continued to timely tender rent payments as they became due for the months of June and July. An officer of Miami Dyeing was instructed by Miami Dade to deliver rent checks to the attorney for Miami Dade and this was accordingly done. Along with these normal rent checks, Miami Dyeing also tendered payment of the delinquent taxes on June 23, 1980 to Miami Dade's attorney. The rent checks for June and July, along with the

June tax payment, were all subsequently rejected by Miami Dade's attorney and returned to Miami Dyeing.

It further appears that on or around the same time as the above rent controversy was taking place, an additional dispute concerning payment of Miami Dyeing's water bill with the City of Opa-Locka arose. Miami Dyeing had incurred approximately $42,000.00 in pre-petition debt for water and continued to incur additional charges subsequent to its Petition of approximately $17,000.00. Although testimony at trial indicated that Miami Dyeing had made arrangements to liquidate its post-petition water obligation by making installment payments, the City of Opa-Locka nevertheless filed a lien against the leased premises for $70,445.00. As landlord, Miami Dade, fully paid this lien on July 16, 1981, even though Miami Dyeing had informed it that the amount claimed by the City was in dispute and included pre-petition obligations. Miami Dyeing was never given the required thirty-day written notice of default as provided for under the lease for its failure to pay the disputed water bill.

The subject lease, by Miami Dade's own testimony, is a very valuable asset of Miami Dyeing and this estate. The rent presently being paid by Miami Dyeing is only the equivalent of one-third (⅓) the current market rent for the property. Moreover, the property has a value in excess of the option purchase price of approximately $750,000.00. Cancellation of this lease would, therefore, constitute a substantial windfall benefit to the landlord, Miami Dade. Conversely, cancellation of the lease would constitute a substantial loss to the estate and effectively eliminate any possibility for Miami Dyeing to reorganize and constitute a significant loss to the estate as Miami Dyeing's Plan of Reorganization is to be exclusively funded by the transfer for consideration of the leasehold and option.

## ASSIGNMENT

■ Miami Dade has asserted that Miami Dyeing is not an assignee, but rather a sub-lessee of Arosa, whose lease rights have been terminated. This position is in contradiction to Miami Dade's own actions. Miami Dade first executed a consent to the assignment (Exhibit C, Miami Dade's Complaint). It thereafter recognized Miami Dyeing's relationship as assignee and lessee in its assignment to Southeast Mortgage Company (Miami Dyeing's Exhibit A), the subordination agreement (Miami Dyeing's Exhibit B), and in the agreed County Court Order (Exhibit F, Miami Dade's Complaint) which, in each instance, identified and treated the relationship of the parties as lessor and lessee. There is nothing in the record to support the contention that Miami Dyeing is a sub-lessee. The fact that the assignment clause in the lease, paragraph 13, does not relieve the assignor (Arosa) of its primary obligation, does not disturb the relationship. In fact, the provision does nothing more than reflect the current state of the law in Florida which holds that, unless specifically released, the assignor remains liable. See *Kornblum v. Henry E. Mangels Company*, 167 So.2d 16 (Fla.1964).

■ The key test between an assignment and a sub-lease is whether the lessee transfers his entire interest or retains a reversionary interest. If no reversionary interest is retained, the transaction is construed to be an assignment. 24 Fla.Jur., Landlord and Tenant, § 58. It is clear from the face of the assignment agreement (Exhibit C, Miami Dade's Complaint) that Arosa retained no reversionary interest.

There is no basis to support Miami Dade's contention that Miami Dyeing is a sub-lessee rather than assignee, with all the rights and privileges of a lessee under the terms of the lease in question by virtue of its assignment from Arosa, which was consented to by Miami Dade itself.

## JURISDICTION

■ Miami Dade asserts that, by virtue of the County Court Order which appears to retain jurisdiction to grant relief to Miami Dade upon a default by Miami Dyeing, the County Court of Dade County has jurisdiction here in considering the issues involved herein. This position is absolutely contrary

to 28 U.S.C. § 1471, which confers upon the Bankruptcy Court original jurisdiction in all civil proceedings arising in cases under Chapter 11 and in all cases involving the disposition of Debtor's property, which in this instance includes the valuable lease rights and option provisions which are at issue. Miami Dade's contention that the County Court retains jurisdiction is contrary to the intent and provisions of the Bankruptcy Code and attendant statutes and would be contrary to the best interests of this estate and the preservation of the assets hereof.

## TERMINATION AND FORFEITURE

█ Miami Dade has asked this Court to enter judgment terminating and forfeiting Miami Dyeing's leasehold interest and its rights under the terms of the lease, based primarily upon the failure of Miami Dyeing to timely pay the real estate taxes for 1980. The failure to pay taxes is the only act of default under the lease that presently exists. Miami Dade urges the Court to impose upon Miami Dyeing the harsh penalty of forfeiture and termination in spite of the mitigating factor that Miami Dyeing has attempted to cure the default by tender of the delinquent taxes.

The case sub judice is strikingly similar to the landmark Florida decision of *Rader v. Prather*, 100 Fla. 591, 130 So. 15 (1930). During the term of the lease, Rader, a tenant, made substantial improvements to the property. However, Rader eventually fell behind three (3) months in rent. Prather thereupon instituted suit to recover possession predicated upon the provision in the lease that if the tenant failed to pay rent when due, it would constitute sufficient cause to permit the landlord to regain possession. During the course of litigation, Rader tendered the delinquent rent, by payment into the Court's registry.

The Supreme Court of Florida ruled in favor of the tenant, Rader, and, in so doing, weighed the equities, the improvements Rader had made to the landlord's premises, and the fact that the rent had been tendered. The Court stated that the trial court, as a court of equity, had inherent powers to relieve the tenant of a forfeiture. Forfeiture clauses are not favored either at law or at equity. As the Supreme Court of Florida stated in the *Rader* decision, at page 17:

"The jurisdiction of equity to relieve from forfeitures seems to have been invoked most frequently in favor of defaulting lessees. If a lease provides that on the failure of the lessee to pay the rent at the specified time the lease shall be void, or the lessor may re-enter and declare the lease at an end, equity will ordinarily intervene to relieve the lessee, and set aside the forfeiture. And this will be done whether the lessee has been dispossessed by the lessor or not. This doctrine is based on the principle that in all cases where the penalty or forfeiture is designed to secure the payment of a certain sum of money, a court of equity will grant relief on the payment of the money secured with interest, also that such covenants in leases are intended merely as security for the payment of money, and therefore the money being paid the purpose of the forfeiture is gone..."

"Indeed it is generally held that equity will relieve against the forfeiture of a lease for the nonpayment of rent whenever it is just and equitable to do so; the only condition precedent to such relief being the tender of payment of the arrears of rent with accrued interest."

Florida courts have followed the principles espoused in *Rader* in several subsequent decisions. See *Nevins Drug Co. v. Bunch*, 63 So.2d 329 (Fla.1953) and *Ft. Walton Square, Inc. v. Purvis*, 177 So.2d 857 (Fla. 1st DCA 1965). In the *Ft. Walton Square* case the lease in question had a valuable option similar to the case now at bar. The court held, in granting equitable relief to the tenant, that it would be manifestly unjust to terminate the lease under which the tenant had an option to purchase.

This Court has adopted the holdings of the above-cited decisions in the recent case of *In re Belize Airways Ltd.*, 5 B.R. 152

(Bkrtcy.S.B.Fla.1980). In *Belize*, Pan American Airlines, the sub-lessor, sought relief from the automatic stay provision of Section 362 of the Bankruptcy Code, so that it might proceed with a state court action to evict the tenant, who was the trustee of the Chapter 11 Debtor, Belize Airways Ltd. The issues before the Bankruptcy Court, which are essentially the same issues now before this Court, concerned whether or not the trustee's leasehold interest was terminated because of a delinquency in rent or whether the Court had equity power to grant relief to the trustee and prevent a forfeiture. The Court, sitting as a court of equity, denied Pan American's request for relief from the automatic stay and ruled that the trustee's leasehold interest should not be terminated. The facts reflected that, as in the instant case, the delinquent rent was tendered and refused by the lessor. In *Belize*, as in this case, the lease in question was a valuable asset of the estate. The facility, a hanger, was essential to the trustee's operation and had a market rent value far in excess of the rate provided in the lease.

This Court is again faced with a situation where a landlord has asked the Court to recognize and enforce a forfeiture. As in *Belize*, however, this Court finds that forfeiture in the present case would be in violation of equitable principles and considerations. Miami Dyeing in this cause tendered payment of the delinquent taxes even before the institution of Miami Dade's action. Moreover, the lease in question is an extremely valuable asset of the estate since the rent due under the lease is significantly below the current market rental rate and the option to purchase the premises is worth $750,000.00. Miami Dyeing has also made significant improvements to the premises during its tenancy. Finally, it is clear that if this Court were to grant the relief sought by Miami Dade, that Miami Dyeing would in all probability be rendered incapable of reorganizing. Miami Dyeing has filed its Plan and Disclosure Statement and anticipates using its equity in this lease to fund its Plan.

Were this Court to permit a forfeiture in this instance, Miami Dyeing would be gravely and perhaps irreparably injured while Miami Dade would receive a windfall as a result of what appears to be a calculated design on the part of Miami Dade to recapture the equity in this lease. The Court notes that Miami Dade has attempted to recover possession of the same leased premises in a prior state court action as recently as 1978. See *Ft. Walton Square, Inc. v. Purvis*, 177 So.2d 857 (Fla. 1st DCA 1965).

In accordance with the above findings of facts and conclusions of law, this Court will not declare the lease in question as forfeited or terminated.

## WAIVER OF DEFAULT BY LANDLORD

In addition to the preceding, the Court finds that any default by Miami Dyeing under its lease with Miami Dade has been waived by the landlord. On April 20, 1981, Miami Dade sent a notice of default to Miami Dyeing under the terms of the lease for failure to pay taxes, which are classified as rent under the lease. On May 5, 1981, subsequent to the notice of default, Miami Dyeing tendered rent for the month of May, which was duly accepted by Miami Dade (Miami Dyeing's Exhibit H). The acceptance of rent after the notice of default was delivered constitutes a waiver of the asserted default. *In re Belize Airways Ltd.*, 5 B.R. 152 (Bkrtcy.S.B.Fla.1980), *Moskos v. Hand*, 247 So.2d 795 (Fla. 4th DCA 1971). In *Belize*, the landlord accepted rent for the month of February after having given notice of termination to the tenant in January. The Court held in that instance that, under Florida law, the acceptance of rent from the tenant after breach of a lease will estop the landlord from asserting a forfeiture. As in *Belize*, the Court now finds that Miami Dade has waived any default by Miami Dyeing with respect to delinquent real estate taxes.

## ASSIGNMENT TO HELLER

Miami Dade has alleged that Miami Dyeing has assigned whatever interest it may

have had to Heller. Miami Dade has offered no testimony at trial to support its contention. The Court thereby deems this issue to have been abandoned at trial.

## STANDING

Miami Dyeing asserted at trial that Miami Dade had no standing to prosecute the instant adversary proceedings, in that it has assigned all of its rights to Southeast Mortgage Company which provided for an assignment of any and all awards in any bankruptcy reorganization proceeding to Southeast Mortgage Company. The Court finds that this issue is ancillary to the other issues addressed in this proceeding. In view of this Court's findings and conclusions herein set forth, it finds that it is unnecessary to rule on the issue of standing.

## UTILITY CHARGES

Miami Dade has asserted that Miami Dyeing is in default under the terms of the lease for failure to pay both its pre and post-petition utility charges for water usage to the City of Opa-Locka. The Court finds that, although there may be some obligation and duty from Miami Dyeing to reimburse Miami Dade for the sums paid by Miami Dade to the City of Opa-Locka in satisfaction of the lien filed, this issue is not before the Court at this time. Further, the Court finds that any default which may have existed was not duly perfected in accordance with the provisions of the lease. It is clear to the Court that the sums claimed to be due with regard to the utility charges are in dispute and must first be resolved before the obligation can be fixed. In addition thereto, it appears evident from Miami Dyeing's Plan and Disclosure Statement that, from the disposition and transfer of the leasehold interest, there will be adequate funds at confirmation to satisfy this obligation, which in part represents a pre-petition debt.