**EXECUTIVE SQUARE OFFICE BUILD-ING, a partnership, Plaintiff,**

v.

**O'CONNOR AND ASSOCIATES, INC., Defendant.**

**Bankruptcy No. 81–9170.**

United States Bankruptcy Court, N. D. Florida, Pensacola Division.

Nov. 2, 1981.

William E. Bond, Jr., Pensacola, Fla., for plaintiff.

John E. Venn, Jr., Pensacola, Fla., for defendant.

## OPINION

N. SANDERS SAULS, Bankruptcy Judge.

THIS CAUSE came on to be heard and considered pursuant to Section 362(e) of Title 11 of the United States Code upon the plaintiff's Complaint for Modification of Automatic Stay and the court having considered the pleadings, the evidence adduced, the argument of counsel, and being otherwise fully advised in the premises finds and concludes as follows:

Pursuant to a lease entered into on May 19, 1981, plaintiff, as lessor, leased certain office premises to the defendant, as lessee. Thereafter no payments were received by the lessor as provided by the lease and on August 4, 1981, the lessor notified the defendant tenant in writing of its default in payment of the rent, specifying the amount of rental and sales tax due, and advising that unless the default was cured within the time specified in the lease that resort would be made to the applicable forfeiture and possession provisions of the lease. Within the time provided for response, the defendant, by letter dated August 11, 1981, advised the plaintiff by letter that the defendant was having some difficulty; that the defendant was in certain negotiations which it hoped would remedy its financial situation; that prior to the end of the week meetings were to be held whereby it would be able to finalize the arrangement; and that it would be appreciated if the plaintiff could work with the defendant a few more days so as not to adversely affect the negotiations. On the same date of August 11, 1981, the plaintiff responded to the defendant's letter. After expressing regret to hearing of the defendant's situation and expressing hope that the current negotiations would be more successful, the plaintiff expressed its concern as to the uncertainty of the negotiations and the future of the defendant firm. Because of this, the plaintiff expressed its willingness to see the defendant through the current negotiations upon the condition that the defendant's principal officer execute his personal note for the rental arrearage and delivery thereof on or before the next day, August 12, 1981. The aforesaid promissory note was delivered on August 12, 1981, along with a letter from the defendant advising that a meeting with potential investors would be held on the following afternoon (August 13, 1981) and that the defendant would know where it stood by the first of the following week. The following day, August 13, 1981, the defendant wrote to the plaintiff advising that a meeting with a potential investor had been held; that it had been suggested that certain lawyers "put together the necessary paperwork" so that the defendant could sell some $300,000 worth of stock; that the defendant should be able to get the papers by the first of the following week; and that it was the defendant's intention to pay the plaintiff out of the first monies received. The plaintiff made no response to the above letter and approximately two weeks later on August 31 notified the defendant that its failure to pay the rent due as specified in the letter of August 4, 1981, had resulted in a termination of the lease and that the plaintiff would pursue all action to regain possession of the premises.

The plaintiff contends that the lease agreement was effectively terminated prior to the filing of the defendant's Chapter 11 petition with the result that there was no lease in existence at that time so as to be subject to the provisions of § 365 of Title 11 and that the automatic stay of § 362 should be modified so as to permit the plaintiff to continue its state court possessory action which was pending but stayed upon the filing of the Chapter 11 petition. The defendant contends that the lease agreement had not been effectively terminated, that the provisions of § 365 are applicable, and that the stay should not therefore be modified or vacated.

Generally, under the old law, although a trustee could assume a contract or lease, he took such contract or lease as he found them and thus was required to cure any default according to the precise terms or provisions in the contract or lease rather than upon any other basis. In many instances, however, the trustee was unable to

effect any cure in accordance with the terms of the lease or contract because either (1) the contractually provided grace period for the cure of a default had already expired thus rendering the lease incapable of being cured, or (2) he was unable to presently cure from a monetary standpoint due to the lack of immediate funds. In these situations, even though termination of the lease had not yet been completed under state law, the lease was nevertheless the subject of noncurable defaults even in the hands of the trustee and thus was unassumable. Of course, leases that had been terminated completely under state law were no longer in existence and thus were not subject to any right to assume.

This situation has been changed substantially by the new law. Now, if the termination of a lease has not yet been completed under state law, a trustee may assume and undertake to cure in the manner provided under § 365(b) irrespective of the lapse of grace provisions in the lease itself and irrespective of whether immediate funds are available. The right to cure and the method of cure are no longer required to be upon the precise terms as provided in the lease. Under § 365(b), so long as the lease has not yet been terminated, a trustee may assume irrespective of whether or not any contractual grace period for the curing of defaults has expired and irrespective of whether he has the immediate present ability to fully cure any rent arrearage.

Under this new statutory section a trustee may assume a lease if (1) he cures or provides adequate assurance that he will cure the default; (2) he compensates the other party for any pecuniary loss resulting from the default or provides adequate assurance that he will so compensate; and, (3) he provides adequate assurance of his future performance or his future ability to perform under the contract or lease.

Even under the new law, however, as under the old, for there to be a right to assume and cure there must still be a contract or lease in existence, i.e., the contract or lease must not be one which has already expired according to its terms or one with

respect to which the termination process has already been completed prior to the filing of a Chapter 11, 13 or 7 case. See generally, 2 *Collier* (15th ed.) § 365.04[1]; *In re Bronx-Westchester Mack Corp.*, 4 B.R. 730, 6 B.C.D. 581 (Bkrtcy.S.D.N.Y.1980); *In the Matter of Mimi's, Inc.*, 5 B.R. 623 (Bkrtcy.N.D.Ga. 1980); *Hazen v. Hospitality Associates, Inc.*, 6 B.R. 778 (Bkrtcy.D.Or. 1980).

A good deal of semantic confusion seems to exist in this area concerning the concept, meaning, and effect of the word "termination". It has been variously stated that if a lease or contract has already been "terminated" under applicable state law, this leaves the trustee with nothing to assume or reject, but that, "if, the termination process has not been completed or, if completed, can be reversed by application of a state anti-forfeiture statute or waiver doctrine the trustee may still assume". See, 2 *Collier* (15th ed.) § 365.04.

Perhaps this should be restated to clarify that until the lease termination process has been completed there has been no "termination subject to reversal". As long as an asserted or alleged lease termination is still subject to an anti-forfeiture (i.e., anti-termination) proviso of a state statute, or a right to resort to equity for relief to prevent such forfeiture or termination, then, until such time as such anti-forfeiture or anti-termination hurdles are cleared it may be imprecise to say that there has been a forfeiture of termination; and, somewhat confusing to say that an asserted or alleged forfeiture or termination is subject to reversal when what is intended is that an ultimate termination may still be avoided by a resort to equity or the application of an anti-forfeiture or anti-termination provision under state law. In other words, if the extinguishment of the lease interest is still subject to an existing and available statutory grace proviso or right to resort to equity to prevent a forfeiture or termination then there has not, as yet, been any ultimate or final termination for the purpose of analyzing whether this court has initial jurisdiction, whether the stay of § 362 is applicable, and whether the provisions of § 365 are applicable.

■ If the termination of a lease has not cleared the final hurdles under state law finally and conclusively prior to the filing of a petition under Chapter 11, 13, or 7, this court has initial jurisdiction with respect to determining whether the estate has any interest in the lease, whether the automatic stay of § 362 is applicable thereto and, if so whether it should be maintained, modified or vacated, and, whether the provisions of § 365 are applicable. Accordingly, this court must look to Florida's law.

■ Under Florida law, if a lease has expired according to its terms or has been lawfully declared terminated by the lessor the tenant who then does not abandon or relinquish the premises but holds over after such expiration or lawful declaration of termination becomes a tenant at sufferance. As stated in 20 Fla.Jur., *Landlord and Tenant*, § 22:

> "A tenancy at sufferance arises where a person who came rightfully into possession continues possession after his right thereto has terminated.... A tenant at sufferance has merely a naked possession and no appreciable estate in the land...."

Section 83.04, Florida Statutes, provides that a tenant who holds over after expiration of his term without any renewal shall be construed to be a tenant at sufferance.

■ Section 83.05, Florida Statutes, provides that upon the failure of a tenant to pay rent at the time it becomes due the lessor thereafter has the right of immediate possession and re-entry. Although the tenant holding over after nonpayment is not expressly declared to be a tenant at sufferance this is the legal effect of this statutory section as the lessor is thereby given the right to immediate possession. In other words, the right of immediate possession passes by statute from the tenant to the landlord. This does not mean, however, that the tenant no longer has any right whatsoever and that an immediate forfeiture and termination has occurred. Section 83.20, Florida Statutes, then provides that any "tenant at sufferance" may be removed from the premises in the manner provided by further statutory sections specifying various judicial eviction proceedings:

> "(1) Where such persons shall hold over and continue in the possession of the demised premises, or any part thereof, after the expiration of his time, without the permission of his landlord.
>
> (2) Where such person shall hold over without permission as aforesaid, after any default in the payment of rent pursuant to the agreement under which such premises are held, *and three (3) days' notice in writing, requiring the payment of such rent or the possession of the premises*, shall have been served by the person entitled to such rent on the person owing the same...." [Emphasis supplied].

■ Absent voluntary abandonment or relinquishment of the premises by the tenant at sufferance, the lessor must resort to the statutorily prescribed judicial eviction proceedings for a judgment of possession. As noted in § 83.20, the lessor's right to evict a tenant who has become a tenant at sufferance after default in payment of rent is conditioned and dependent upon the giving of a minimum of "three (3) days' notice in writing, requiring the payment of such rent or the possession of the premises". This proviso in § 83.20 is an anti-forfeiture provision whereby the tenant who has been rendered one at sufferance by § 83.05 may negate his reduction to the status of a tenant at sufferance, be reinstated to his prior estate and, thus avoid a forfeiture and termination, by the making of the required payment of rent due. Until this required anti-forfeiture notice procedure is followed by the landlord, so as to provide the tenant with an opportunity to avoid a forfeiture, the landlord has no right to institute proceedings to obtain a judgment of possession. A tenant retains, until then, the right to reinstate and avoid any forfeiture of his prior estate by the payment of the rent accrued and then due.

■ In addition to this statutory anti-forfeiture and reinstatement right which a tenant in Florida may avail himself of, there is also the right in appropriate cases, upon a tender of the rent due, to seek

equitable relief to avoid a forfeiture or termination of his estate and obtain a reinstatement to his prior tenancy. *Rader v. Prather*, 100 Fla. 591, 130 So. 15 (1930); *Brownlee v. Sussman*, 238 So.2d 317 (Fla. 3 D.C.A. 1970); *Seidle v. Pan American World Airways, Inc.*, 5 B.R. 152, 6 B.C.D. 637 (Bkrtcy.S.D.Fla.1980).

"Equity will relieve against the forfeiture of a lease for the non-payment of rent whenever it is just and equitable to do so; the only condition precedent to such relief being the tender of payment of the arrears of rent with accrued interest". *Rader v. Prather*, 130 So. 15, 17 (Fla.1930).

Thus, even if a tenant has failed to exercise his statutorily granted privilege to avoid forfeiture and this privilege has ceased to exist, he may still seek relief in equity from a forfeiture or termination of his estate.

In the instant case, the plaintiff lessor complied with the prescribed procedure mandated by § 83.20, Florida Statutes. Proper written notice in accordance with the statute and in compliance with the provisions of the lease was delivered to the tenant. Although a short period of additional grace beyond that called for by the statute and the lease was extended to the tenant by the lessor subsequent to the initial written notice, the tenant's right to avoid a forfeiture and a termination under the statute ceased to exist on August 31, 1981 (or in any event upon ten (10) days thereafter) when the tenant was notified by another letter that possessory action would be instituted. Viewed in the most favorable light, loss of the privilege or statutory right occurred prior to September 16, 1981, and the filing of the Chapter 11 petition herein.

■ Even though the statutory privilege or right had expired, there still remained the right to seek equitable relief as a consequence of the pending state possessory proceedings upon a tender of the rent due and the establishment of equitable circumstances justifying the avoidance of a forfeiture. This right to seek equity being *in esse* at the time of the filing of the petition herein, the lease had not thus been finally terminated and is properly subject therefore to this court's jurisdiction and the automatic stay of § 362.

■ As a condition precedent to obtaining equitable relief under Florida law a tender of the rent arrearages must be made. *Mayflower Associates, Inc. v. Elliott*, 81 So.2d 719 (Fla.1955); *Brownlee v. Sussman*, 238 So.2d 317 (Fla. 3d D.C.A. 1970). Failure to make such tender is determinative of the cause irrespective of the equities that may exist. *Mayflower Associates, Inc. v. Elliott, supra.*

■ Absent the enactment of the new law [i.e., § 365 of Title 11 of the United States Code] this court in exercising its equitable jurisdiction would be bound to follow Florida's law in this respect and failure of tender would be dispositive. As previously noted above, however, § 365 is a substantial departure from prior law. As a result, an immediate cure of arrearage or a tender thereof is no longer absolutely required provided "adequate assurance" for the same is made in accordance with § 365. Of course, the assumption of any lease herein is subject to court approval and a tender either of payment or adequate assurance for such payment by a trustee in connection therewith which would be a cure of defaults is a required condition for approval under § 365. See, *Seidle v. Pan American World Airways, Inc.*, 5 B.R. 152, 6 B.C.D. 637 (Bkrtcy.S.D.Fla.1980).

■ In the instant case, the defendant contends that it has certain equitable grounds that militate against any forfeiture or termination of the subject lease and that a cure of the rent arrearage or adequate assurance therefore can be provided under § 365 if the stay of § 362 is maintained. The only evidence submitted tending to support any reasonable likelihood that the defendant could prevail upon a final hearing as to this position was the vague testimony of the chief officer of the defendant that a commission on an unclosed real estate sale was imminent without any other evidence in substantiation. In addition there was also some equally vague testimony that a certain portion of the furniture that had been purchased by defendant was

paid for and thus available to stand as payment. Here again, this was unsupported by any other evidence establishing whether any of the furniture was in fact free from any outstanding lien or claim or any evidence establishing any definite value or market therefor. If an unencumbered asset is available, before there can be any consideration of its use in the curing of lease defaults, its value and marketability, especially its liquidity, must at a very minimum be clearly established.

Finally, the evidence plainly demonstrated no reasonable liklihood that upon any final hearing the defendant could furnish any adequate assurance of future performance under the lease. Defendant had no prior earnings record whatsoever. Its foreseeable sources of additional capital and revenue consisted of a contemplated stock issue and the hoped for real estate commission.

Under § 362(e) of Title 11 this court finds no reasonable liklihood that the defendant will prevail at any final hearing under § 362(d), the equities go with the plaintiff herein, and that the stay of § 362(a) should be vacated.