### In the Matter of TRUFFLES OF SARASOTA, INC., Debtor.

#### Bankruptcy No. 83–461.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

June 9, 1983.

---

Don Stichter, Tampa, Fla., for debtor.

Malka Isaak, Tampa, Fla., for landlord.

## ORDER ON APPLICATION TO ASSUME EXECUTORY CONTRACT

ALEXANDER L. PASKAY, Bankruptcy Judge.

THIS IS a business reorganization case and the immediate matter under consideration is an Application to Assume Executory Contract filed by Truffles of Sarasota, Inc., the Chapter 11 Debtor-in-Possession. The Debtor owns a restaurant known as "Truffles" which is located on the second floor of a commercial building on St. Armand's Key, Sarasota, Florida, which is owned by Jansen W. Taylor, Jr. (Landlord). The Debtor, by and through its President, Beirne Brown, leased the premises by written agreement on September 1, 1981, and now seeks to assume the alleged executory portion of the lease.

The Landlord contends that the lease which the Debtor now seeks to assume was effectively terminated pursuant to the terms of the lease agreement on February 2, 1983, more than one month before the Debtor filed a Petition for Relief.

On the other hand, the Debtor contends that Albert A. Sanchez (Sanchez), counsel for the Landlord, orally waived the right to terminate the lease on January 17, 1983, thereby rendering the purported termination invalid. Thus, the Debtor alleges that there is valid lease in existence and that the Debtor is or will be capable of assuming the lease upon procurement of a purchaser for the restaurant. The Debtor also takes the position that even if the termination is determined to be valid, the lease is capable of being rejuvenated by the Court upon a showing of inequitable grounds for forfeiture, therefore, it may be assumed by the Debtor.

The Court heard argument of counsel and testimony of witnesses, considered the record in its entirety and finds as follows:

On September 1, 1981, the Debtor and Taylor executed a lease agreement whereby

the Debtor agreed to lease the entire second story of a building located on St. Armand's Key for use as a restaurant and lounge known as "Truffles." (Landlord's Exh. # 2). The lease covered a three-year term and provided for five three-year extensions.

Section 15.1 of the lease provides in pertinent part:

Section 15.1

"EVENTS OF DEFAULT. Lessee agrees that any one or more of the following events will be considered events of default as said term is used herein, that is to say, if—

(E) Lessee shall make default in any installment of rent required to be made by Lessee hereunder when due as herein provided and such default shall continue for 15 days after notice thereof in writing to Lessee."

On December 2, 1982, the Debtor defaulted on the lease by failing to pay the rent; the Debtor was also unable to make the rental payments which were due on January 2, and February 2, 1983.

On January 17, 1983, Sanchez sent a certified letter to the Debtor in which he informed the Debtor that the December 2 and January 2 rent payments were in default. In addition, he indicated that the Debtor must tender full payment within fifteen days or he would advise his client to exercise "... any and all rights pursuant to the Lease Agreement and Florida Law ..." (Landlord's Comp. Exh. # 1).

On the afternoon of January 17, 1983, after the notice of default had been sent, Beirne Brown and Jay R. Dingledy (Dingledy), the Debtor's attorney, met with Sanchez in his office. At this meeting, the Debtor offered to submit, for the Landlord's consideration, a "plan of repayment." While there is no evidence to suggest that Sanchez rejected the Debtor's offer to submit a Plan of Repayment for the Landlord's consideration, there is also no evidence to support the Debtor's contention that Sanchez agreed on behalf of his client to forego any rights which the client had earlier reserved pursuant to the lease agreement.

The Debtor failed to remit the delinquent rent payments within the specified time. Dingledy repeatedly attempted, but was unable to reach Sanchez by telephone on February 1, 1983. Therefore, he telephoned Brown and advised him of the importance of establishing contact with Sanchez on February 1, 1983. Brown did not speak with Sanchez until the morning of February 2, 1983, after the termination notice had been sent. On February 2, 1983, the Debtor received the second certified letter in which the Landlord advised the Debtor that the lease was terminated and that the Debtor was to vacate immediately. On or about February 4, 1983, the Landlord filed suit to remove the tenant from the premises, in the Circuit Court in and for Sarasota County; a hearing on the cause was set for March 9, 1983. On March 9, 1983, the Debtor filed a Voluntary Petition for Relief pursuant to Chapter 11 of the Bankruptcy Code.

It is important to point out that on February 25, 1983, James L. Ritchey, a Sarasota attorney who represented the Debtor in the landlord-tenant disputes, tendered a check in an amount equal to three months rent plus sales tax, to Sanchez, who refused to accept the same. A second tender was made on March 1, 1983, in the presence of the Circuit Court Judge and again, Sanchez refused the tender.

As noted above, the Debtor contends that the Landlord's right to terminate the lease agreement was waived by the Landlord's counsel on January 17, 1983. It is the Debtor's contention that Sanchez agreed to accept a Plan of Repayment to be submitted by the Debtor within two weeks, and in so doing, impliedly waived all rights to terminate the lease, even though a notice of default reserving those rights had been dispatched.

It is well established that waiver involves the intentional and voluntary relinquishment of a known right or conduct from which waiver can be reasonably inferred. *Fireman's Fund Insurance Corp. v. Vogel,* 195 So.2d 20 (Fla. 2d DCA 1967). In addition, where waiver is sought to be established by conduct, "... the acts, conduct

or circumstances relied upon to show waiver must make out a clear case." *Fireman's Fund Insurance Corp. v. Vogel, supra* at 24; *Gilman v. Butzloff,* 155 Fla. 888, 22 So.2d 263 (1945). In this case, it is undisputed that Sanchez never affirmatively represented to either Brown or his attorney that as a result of their meeting on January 17, 1983, the Notice of Default would be withdrawn or considered a nullity. Further, the Debtor has failed to present evidence of either conduct or circumstances which would warrant a finding that the Landlord waived his contractual rights or even that the Debtor believed that the Landlord had waived his rights. As noted earlier, Dingledy deemed it imperative that either he or Brown contact Sanchez on the eve of the deadline for tender, an action which belies his alleged belief that the Landlord had waived his rights.

Having established that the Landlord did not waive his right to terminate the lease on January 17, 1983, it is necessary to consider the Debtor's contentions that pursuant to the Florida law and upon a showing of equitable circumstances, a terminated lease may be reinstated and that once revived, it can be assumed by the Debtor pursuant to § 365.

In support of its position, the Debtor relies on the case of *Executive Square Office Building v. O'Connor,* 19 B.R. 143 (Bkrtcy. N.D.Fla.1981). The facts in *Executive Square* are strikingly similar to those in the case at bar, although posited in the context of a landlord's complaint to modify stay in order to continue its possessory action in state court. The Bankruptcy Court for the Northern District of Florida, held that even though a landlord effectively exercises his statutory or contractual right to terminate a lease upon the tenant's failure to pay rent, and even though the tenant failed to exercise his statutory or contractual right to avoid a forfeiture by curing the default within a specified time period, the tenant retained the right to seek relief in a court of equity. *Executive Square Office Building v. O'Connor, supra.* Thus, according to *Executive Square,* if the tenant tenders to the landlord payment of the arrearges plus

accrued interest, a court of equity will reinstate the lease upon a showing that such relief is "just and equitable," *Rader v. Prather,* 100 Fla. 591, 130 So. 15, 17 (Fla. 1930).

■ In the instant case, the Debtor faces a dual burden. First, he must show that the equities lie with the Debtor thereby justifying a finding that the lease was wrongfully terminated or the forfeiture should be set aside on equitable grounds. Second, the Debtor must demonstrate an ability to comply with Bankruptcy Code § 365(b)(1) in order to assume the executory portion of the lease. This is so because before a Debtor can assume an executory contract, the Debtor must establish by competent proof that all conditions precedent to the right to assume an executory contract under the Code are met, which requirements are as follows:

Section § 365(b)(1)(A), (B), (C):

"(b)(1) If there has been a default in an executory contract or unexpired lease of the Debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure such default;

(B) compensates or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

■ Assuming, without deciding, that this lease can be resuscitated in spite of the undeniable fact of an effective termination prior to the commencement of this Chapter 11 case, c.f. *Schokbeton* pursuant to equitable principles, see *Executive Square, supra,* the Debtor is unable to assume this lease for the following reasons:

It is undisputed that the Debtor is not, at present, in a financial position to cure the

arrearages. The restaurant is not currently operating and the Debtor is generating no income. While the Debtor plans to cure the arrearages from the sale of the restaurant, the Debtor does not have a contract for sale or a live offer to purchase. Clearly, the Debtor cannot provide any assurances of either prompt cure or future performances under the lease.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Application to Assume Executory Contract filed by Truffles of Sarasota, Inc. be, and the same hereby is, denied.