In the Matter of HAUTE CUISINE, INC., Debtor.

**Bankruptcy No. 85–2034.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 5, 1986.

Jeffrey Warren, Tampa, Fla., for debtor.

Mark Petche, Tampa, Fla., for Old Hyde Park.

## ORDER ON MOTION TO ASSUME AND ASSIGN LEASE

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER before the Court in this Chapter 11 case is the Motion to Assume and "Assign Lease Assignment" (sic) with Old Hyde Park Village Center, Ltd., filed by the Debtor. Although the Debtor originally sought to assume and assign the lease, at the time of the hearing the assignee was no longer willing to proceed and the motion was treated as one to assume the lease agreement between the Debtor and Old Hyde Park Village Center, Ltd. (Old Hyde Park).

Old Hyde Park vigorously opposed the Debtor's Motion to Assume, contending that the Debtor could not cure or provide adequate assurance that it would cure its admitted default; that it could not compensate or provide adequate assurance of compensation for damages suffered as a result of the default; nor could it provide adequate assurance of future performance.

The record, as established at the final evidentiary hearing, presents the following material facts germane to the resolution of

the Debtor's motion to assume unexpired, non-residential lease:

The Debtor owned and operated a restaurant known as "Lafitte's" which is located in a retail shopping center in Tampa, Florida known as Old Hyde Park Village, which is being developed by Old Hyde Park Village Center, Ltd.

On January 5, 1984, Old Hyde Park, as Lessor, and the Debtor, as Lessee, entered into a Retail Lease Agreement (Lease Agreement) regarding the premises described as Tenant Store No. E38, Block E, in Old Hyde Park Village (Leased Premises). The only assets and business operations of the Debtor involve this restaurant.

Under the Lease Agreement, the Debtor agreed to use the Leased Premises for the purpose of operating a "fine dining," tablecloth, waiter/waitress restaurant with a full bar (wine and liquor) serving full course meals (lunch and dinner) seven days a week. The Lease Agreement provided for payment of a Guaranteed Minimum Rent (GMR) and Percentage Rent in the amount, if any, by which six percent of the Debtor's gross sales exceed the GMR. The term of the lease was for an initial period of 119 months with options to renew for an additional ten years provided the Debtor pays Percentage Rent in the last seven years of the initial lease term and thereafter.

During the initial lease term, the Debtor has a right to set-off against any Percentage Rent due an amount not to exceed $18,000 per annum on a monthly basis to compensate the Debtor for the expenses it incurred to improve the Leased Premises. Additionally, the Lease Agreement has special provisions to protect the Debtor from the interruption of its business as a result of construction of the shopping center by Old Hyde Park. Specifically, the Lease Agreement provides for an adjustment of the GMR to the extent the Debtor's business was interrupted as a result of construction and the GMR equals more than 6% of the Debtor's gross sales for a prior month.

Pursuant to the Lease Agreement, the Debtor opened for business on February 12, 1984 and operated a restaurant at the Leased Premises through June 1985 at which time the restaurant was closed.

Prior to the Debtor's filing of its Petition for Relief under Chapter 11 on July 31, 1985, the Debtor and Old Hyde Park were involved in an ongoing dispute regarding the amount of rent owed by the Debtor to Old Hyde Park. The Debtor has filed a separate civil action against Old Hyde Park seeking a declaration of its rights under the Lease Agreement as well as seeking damages against Old Hyde Park resulting from its actions in connection with the construction of the shopping center project and other matters. That civil action is now pending in the Circuit Court in and for Hillsborough County, Florida.

It is undisputed that no GMR was paid by the Debtor to Old Hyde Park for the period May 1, 1985 through January 31, 1986. The Debtor maintains that no GMR is due under the Lease Agreement for this period as a result of the construction interruption of its business operations. The maximum GMR that could be owed by the Debtor for this time period would be $44,120.97. Commencing February 1, 1986, the Debtor has paid and as part of its proposed assumption will continue to pay under protest the GMR and Percentage Rent due under the Lease Agreement until its dispute with Old Hyde Park is resolved.

Additionally, Old Hyde Park maintains that it could have reasonably expected to receive from the Debtor as additional Percentage Rent the sum of $25,880. There is no competent evidence before this Court to support this contention and the Court considers it as totally speculative.

Old Hyde Park further asserts that the Debtor is liable for advertising and promotional services, grand opening expenses, interest on unpaid amounts, sales tax on unpaid GMR and Percentage Rent and attorney's fees. These items are disputed by the Debtor. Old Hyde Park and the Debtor agree that real estate taxes attributable to the Leased Premises are owed for 1985

and the Debtor acknowledges its obligation to pay such taxes which are not yet due and payable. The amount of these taxes is approximately $2,700, subject to verification of the actual real estate tax. The controversy involving alleged monetary defaults under the Lease Agreement will be resolved in the pending state court action. For purposes of considering the motion before this Court, no determination is being made regarding the merits of the respective monetary default claims by the Debtor and Old Hyde Park. In the event monetary defaults are established, the Debtor maintains that those defaults will be cured immediately by cash payment.

In addition to the disputed monetary claims regarding a default under the Lease Agreement, the Debtor acknowledges that its failure to have an open and operating restaurant is a default under the Lease Agreement. Additionally, the alcoholic beverage license of the Debtor has lapsed and the wet zoning for the Leased Premises has terminated.

The Debtor has retained consultants to revise its restaurant concept and to implement a reopening of the restaurant within 60 days from the entry of an order by this Court authorizing its assumption of the Lease Agreement. Accordingly, the Debtor proposes to cure the non-monetary defaults under the Lease Agreement within 60 days and presented expert testimony to confirm the feasibility of reopening the restaurant within this time period. The expert testimony also confirmed that the Debtor can obtain the necessary alcoholic beverage license and wet zoning for the Leased Premises during the 60 day period while it is also preparing the Leased Premises to be reopened.

The Debtor also presented evidence in support of the feasibility of its new proposed restaurant concept. Expert witnesses testified regarding the pro forma profit and loss projections for three years operations of the reopened restaurant, using appropriate assumptions based upon the existing facility. The restaurant is already fully equipped and the evidence that was presented by these experts for the Debtor was not rebutted.

In order to assume the Lease Agreement, the Debtor must establish by competent proof that all conditions precedent to its right to assume the executory contract under § 365 of the Bankruptcy Code have been met. *In re Truffles of Sarasota, Inc.*, 30 B.R. 666 (Bkrtcy.M.D.Fla.1983). Those requirements are as follows:

§ 365(b)(1)(A)(B)(C):

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure such default;

(B) compensates or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance for future performance under such contract or lease.

Additionally, since the Leased Premises involve a lease of real property in a shopping center, the provisions of § 365(b)(3) apply which state:

(3) For the purposes of paragraph (1) of this subsection and (2)(B) of subsection (f), adequate assurance of future performance of the lease of real property in a shopping center includes adequate assurance—

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center.

It appears from the record that the Debtor is willing to cure any and all existing defaults. The only monetary default which is clearly established at this time which the Debtor must cure under § 365(b)(1) as a pre-condition for assuming the lease is the payment of the real estate taxes which the Debtor is prepared to pay without delay and maintain on a current basis the minimum rent payments under the lease.

Although the potential monetary defaults claimed by Old Hyde Park could be substantial, the principal shareholder of the Debtor has indicated that he is in the position, subject to assumption of the Lease Agreement, to make sufficient capital contributions to the Debtor to enable the Debtor to immediately cure any monetary default which may exist under the Lease Agreement as ultimately determined in the state court action. Moreover, the non-monetary defaults are all curable within 60 days.

This leaves for consideration the requirement of § 365(b)(1)(C) which is adequate assurance of future performance of all covenants of the lease. This Court is mindful of the congressional intent which was to insure that the interest of the shopping center landlord is protected and to make certain that it is receiving substantially what it bargained for. *In re Lafayette Radio Electronics Corporation*, 7 B.R. 189 (1980). However, this policy is not inconsistent with, and does not override, the established policy favoring assumption and assignment of executory contracts and leases by debtors whose reorganization depends upon retaining rather than forfeiting

valuable contract rights. *In re Bronx-Westchester Mack Corporation*, 4 B.R. 730, 6 B.C.D. 581, 584 (Bkrcy.S.D.N.Y. 1980).

An application of each of the special provisions enumerated by Congress to protect shopping center landlords to the facts before this Court confirms that the standards of adequate assurance of future performance of the Lease Agreement are met by the assumption of the Lease Agreement by the Debtor provided that the promised new capital will, in fact, be contributed by shareholders. Based upon the cash flow projections presented to the Court by expert testimony, the restaurant can be operated successfully and will be able to generate the funds from the operation to meet all monetary obligations under the lease. The Percentage Rent historically paid by the Debtor has been minimal and the projections reflect that Percentage Rent will clearly not decline substantially as a result of the assumption. Since the Debtor is assuming the Lease with all of its provisions, there is no controversy regarding the provisions of § 365(b)(3)(C).

During the course of the evidentiary hearing, an issue was raised regarding the proposed new format for the restaurant which is patterned after the famous White Horse Inn located in London, England. Although this represents a change from the original format of Lafitte's, described in the lease as a "fine dining" establishment, the change is not inconsistent with other prospective tenants that Old Hyde Park has considered in connection with the Leased Premises. Clearly, there is no evidence that such a format would violate the terms of the Lease Agreement. Finally, the assumption will clearly not disrupt any tenant mix or balance in the shopping center since the Leased Premises are intended for use as a first class restaurant.

Based on the foregoing it is not unwarranted to conclude that the evidence presented by the Debtor has been at least facially established that the Debtor is now in a position to meet the preconditioned requirements of § 365(b) for the assump-

tion of an unexpired, non-residential lease. However, the evidence presented in support of the motion totally lacks adequate documentation, especially with regard to the Debtor's ability to cure and compensate. Moreover, since the precise amount of the arrearages which the Debtor must cure is yet to be determined by a non-bankruptcy forum in the currently pending lawsuit between the parties, the Debtor must establish by firm documentation that it will be able to meet the requirements to cure all arrearages even if such arrearages are found to be the amount contended by Old Hyde Park. For this reason, the Debtor shall be required to provide further support and adequate documentation for its contentions by complying with the terms of this order as set forth below. Based on the foregoing, it is

ORDERED, ADJUDGED AND DECREED that the Debtor's Motion to Assume Unexpired Lease with Old Hyde Park Village Center, Ltd. be, and the same is hereby, granted provided that the Debtor timely performs all of the following conditions precedent to the assumption of this non-residential lease:

(1) The Debtor shall begin to make regular contract payments, including the February payment which shall be paid immediately, and shall continue to make timely payments pursuant to the terms of the lease;

(2) The Debtor shall file with this Court a written agreement executed by Mrs. Jacobsen, pledging Certificates of Deposit in the amount of $100,000 to be used by the Debtor for redecoration and start-up expenses and waive all defenses to claims of Old Hyde Park against the Debtor;

(3) The Debtor shall obtain and file with this Court an irrevocable letter of credit in favor of Old Hyde Park in the amount of $50,000 and furnish proof of same to Old Hyde Park;

(4) The Debtor shall file proof of reinstatement of its liquor license within 6 weeks of the date of this order;

(5) The Debtor shall open the restaurant and begin full operation, including serving alcoholic beverages, within 60 days of the date of this order;

(6) The Debtor shall pay all 1984 and 1985 real estate taxes due and payable pursuant to the terms of the lease;

(7) The Debtor shall furnish proof of adequate insurance to Old Hyde Park within 20 days from the date of this order but in any event not later than 10 days prior to reopening the restaurant.

In the event the Debtor fails to perform any of the above-specified conditions precedent, Old Hyde Park shall be entitled to immediately obtain relief from the automatic stay in order to proceed to enforce its rights against the Debtor in a non-bankruptcy forum for the purpose of regaining the premises and shall be entitled to file an application for allowance of administrative rent for the occupancy and use of the premises during the pendency of the Chapter 11. If the Debtor successfully performs all of the preceding conditions, the lease shall be deemed to be assumed as of 60 days from the date of this order. It is further

ORDERED, ADJUDGED AND DECREED that the Debtor shall pay rent arrearages in an amount to be determined by state court within 60 days of the entry of the final order by the state court. It is further

ORDERED, ADJUDGED AND DECREED that compensatory damages arising from the default, including attorney's fees, shall be paid in an amount to be determined and within 30 days of that determination by this Court following the state court determination of rent arrearages. In the event the Debtor fails to timely comply with its post-assumption obligations pursuant to the terms of the lease or in curing rent arrearages or compensatory damages, Old Hyde Park shall be entitled to seek a declaration that the lease has been breached and is terminated and shall then be entitled to seek relief from the automatic stay to proceed in a non-bank-

ruptcy forum to regain possession of the premises.