**In re GLOBE PARCEL SERVICE, INC., Debtor.**

**Leo F. DOYLE, Trustee,**

**v.**

**MELLON BANK (EAST) NATIONAL ASSOCIATION Mellon Bank f/d/b/a Girard Bank and the Golden Nugget Casino.**

**Misc. A. No. 86-595.**

United States District Court, E.D. Pennsylvania.

Feb. 23, 1987.

Keith N. Leonard, Philadelphia, Pa., for Trustee, Leo F. Doyle.

Rona J. Rosen, Philadelphia, Pa., for defendant, Mellon Bank.

Kevin F. Berry, Philadelphia, Pa., for defendant, Golden Nugget Casino.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

This is a motion for withdrawal of the court's reference of this proceeding to the United States Bankruptcy Court. The debtor, Globe Parcel Service, Inc. ("Globe"), was formerly engaged in the business of transporting packages to the Soviet Union. During the period relevant to this proceeding, Peter Yamanov and Elizabeth Yamanov served as Globe's executive officers. Beginning in March 1983, the Yamanov's son, Batir, became involved in Globe's daily operations and was subsequently added as an authorized signatory to some—but not all—cf Globe's bank ac-

counts. Between March 1983 and January 1984, Batir Yamanov allegedly withdrew more than $250,000 from a Globe operating account at Mellon Bank.[1] On January 27, 1984, ten months after Batir became involved with the business, Globe filed a Chapter 7 petition in bankruptcy.

The trustee in bankruptcy has subsequently initiated an adversary proceeding in this matter against Mellon Bank (East) National Association and the Golden Nugget Casino. The trustee's complaint makes numerous allegations. The trustee alleges that Batir was not an authorized signatory on the Mellon Bank account from which he withdrew the $250,000 from Globe funds. The trustee charges that Batir converted the Globe funds to his own personal uses, one of which was to pay personal debts and obtain gaming credit at the Golden Nugget Casino. The trustee also contends that Batir's withdrawals so significantly drained Globe's operating accounts that Globe was unable to perform its business contracts. As a consequence of Globe's failure to perform, it lost its principal asset: the license to transport goods to the Soviet Union.

The trustee seeks a damage recovery on behalf of Globe under two causes of action. First, the trustee charges Mellon Bank with negligence, breach of contract, and breach of fiduciary duty by permitting Batir to withdraw Globe's assets without authorization. Second, the trustee charges the Golden Nugget Casino with negligence and violations of the New Jersey gaming laws by knowingly permitting Batir to use corporate funds to pay personal debts and obtain gaming credit. A jury trial was demanded.

By standing order of the Chief Judge of the Eastern District, this adversary matter was referred automatically to the bankruptcy court. *See Raff v. Gordon,* 58 B.R. 988, 991 n. 5 (E.D.Pa.1986); *In re Fleet,* 53 B.R. 833, 837 (Bankr.E.D.Pa.1985); *see also* 28 U.S.C. § 157(a) (Supp.III 1985). The defendants Mellon Bank and Golden Nugget now petition this district court to with-

---

1. The Mellon Bank relevant to these events was formerly doing business as Girard Bank. For the purposes of this Memorandum only, the court's references to "Mellon Bank" are intended to denote both Mellon Bank and Girard Bank, Mellon's predecessor.

draw this automatic reference and hear the claims.

The 1984 Amendments [2] to the Bankruptcy Code recognized three categories of legal controversies which might conceivably arise before a United States Bankruptcy Court. *See* 28 U.S.C. § 157 (Supp.III 1985); *Citizens Nat'l Bank v. Schaberg Lumber Co. (In re Bowling Green Truss, Inc.)*, 53 B.R. 391, 392–93 (Bankr.W.D.Ky.1985); *Franklin Computer Corp. v. Harry Strauss & Sons, Inc. (In re Franklin Computer Corp.)*, 50 B.R. 620, 624–25 (Bankr.E.D.Pa.1985). For each category, the extent of the bankruptcy court's jurisdiction is delineated.

■ The first category, core proceedings, may be heard and resolved by the bankruptcy court. 28 U.S.C. § 157(b)(1) (Supp.III 1985). The statute authorizes a bankruptcy court presiding over a core proceeding to enter appropriate final orders and judgments, subject to an appeal to the district court. *Id.* The second category, non-core related proceedings, may not be resolved by the bankruptcy court but the bankruptcy judge is authorized to hear the dispute and submit proposal findings of fact and conclusions of law to the district court. 28 U.S.C. § 157(c)(1) (Supp.III 1985).[3] Having received the bankruptcy judge's findings and conclusions, the district court must review de novo those matters to which a party has specifically and timely objected. *Id.* The third category, non-core unrelated proceedings, may neither be heard nor resolved by the bankruptcy court. *See United States v. Farmers State Bank (In re Alexander)*, 49 B.R. 733, 737 (Bankr.D.N.D.1985).

As these provisions of the Bankruptcy Code indicate, determining whether a proceeding is core, non-core related, or non-core unrelated directly affects the jurisdictional authority of the bankruptcy court to hear the dispute. Matters qualifying as core proceedings—authorizing the broadest exercise of jurisdiction by the bankruptcy court—are organized by the statute into fifteen separate groups.[4] 28 U.S.C. § 157(b)(2)(A)–(2)(O) (Supp.III 1985). Although the statute's fifteenth group could be read as a virtual catch-all provision, the Supreme Court has recognized certain constitutional limitations which uniquely restrict the jurisdiction of the United States Bankruptcy Courts.

In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Court noted that the bankruptcy courts were established by Congress as Article I courts. *Id.* at 60–61, 102 S.Ct. at 2865–66. The power to adjudicate private rights, however, must, consistent with the Constitution, be vested in Article III courts. *Id.* at 76–77, 102 S.Ct. at 2874. Thus, the Court distinguished the authority to restructure debtor-creditor relations—a task permissibly vested in the Article I bankruptcy courts—from the authority to adjudicate state-created private rights related to the federal bankruptcy proceeding. The Court determined that Article III of the Constitution barred Congress from extending the jurisdiction of the bankruptcy courts to all disputes related to matters which arose under the federal bankruptcy laws. *Id.* at 76, 102 S.Ct. at 2874. The Court in *Marathon* described the dispute on appeal as involving "a right created by

**2.** The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984).

**3.** The statute provides that the district court may, *if the parties consent*, refer a non-core related proceeding to a bankruptcy judge to hear, resolve, and enter a final order. 28 U.S.C. § 157(c)(2) (Supp.III 1985). By contesting the bankruptcy court's jurisdiction, the defendants' lack of consent is clear.

**4.** Two factors undercut the limiting effect of Congress' fifteen-group organization scheme.

First, the statute admonishes that the groupings are not exhaustive. 28 U.S.C. § 157(b)(2) (Supp.III 1985). Second, the statute's fifteenth provision is so broadly drafted as to conceivably include all matters touching on the bankruptcy proceeding, irrespective of how remote they might be. 28 U.S.C. § 157(b)(2)(O) (Supp.III 1985) ("[O]ther proceedings affecting the liquidation of the assets of the state or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.")

*state* law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court." *Id.* at 84, 102 S.Ct. at 2878 (emphasis in original). The bankruptcy court's final adjudication of such rights, the Court ruled, contravened Article III.

█ A similar result is dictated here. The trustee's claims of negligence, breach of contract, breach of fiduciary duty, and gaming law violations are each created by state law and each existed "independent of and antecedent to" the debtor's chapter 7 filing. Permitting the trustee to characterize this proceeding as core with the meaning of § 157(b) would run counter to the Supreme Court's intent in *Marathon.*

This court has no hesitation, however, in characterizing the trustee's complaint as a related non-core proceeding authorized by 28 U.S.C. § 157(c). The United States Court of Appeals for the Third Circuit has defined an action as "related to" bankruptcy if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Bobroff v. Continental Bank (In re Bobroff)*, 766 F.2d 797, 802 (3d Cir.1985); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984). If the trustee's efforts to recover damages from Mellon Bank and Golden Nugget are successful, the debtor's assets will swell, thus facilitating a greater distribution to its creditors. The potential for such a result qualifies the trustee's adversary action as a related non-core proceeding.[5]

Having concluded that the bankruptcy court may constitutionally exercise its jurisdiction to hear the trustee's case, the court must next decide whether such a procedure in this case is appropriate or whether other considerations favor withdrawing the reference. Preliminarily, I note that the defendants have demanded a jury trial on the non-core matters. As a result, two threshold questions are raised.

First, do the defendants have a constitutional right to a trial by jury? Second, can the bankruptcy court conduct such a jury trial if one is required? The trustee urges that in non-core proceedings, there is no right to a jury trial in bankruptcy court. 1 *Collier on Bankruptcy* ¶ 3.01, at 3–88 (L. King 15th ed. 1986). The defendants assert that the bankruptcy scheme enacted by Congress intended a right to a jury trial. Fed.Bankr.R. 9015.

Guidance on these questions is sparse and nondefinitive.[6] Nevertheless, a careful analysis is revealing. Whether or not the right to jury trial exists in bankruptcy non-core adjudications, it is indisputable that the litigants will have a statutory right to the district court's de novo review of the bankruptcy court's findings. 28 U.S.C. § 157(d) (Supp.III 1985). Moreover, assuming for the moment that a constitutional right to a jury trial exists in non-core proceedings, it is clear that a jury trial in the bankruptcy court would not satisfy this right. On de novo review, the district court is statutorily instructed to re-examine the facts tried in the bankruptcy court. 28 U.S.C. § 157(c)(1) (Supp.III 1985). If those facts were tried by a bankruptcy court jury, the district court's subsequent re-examination of the jury's findings would offend the Seventh Amendment which unequivocally proscribes such a re-examination. U.S. Const. amend. VII ("no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law."). Thus, if a right to a jury trial in non-core proceedings exists, it could only be satisfied by a jury trial at the district court level.

█ As noted above, the bankruptcy court is barred by the Constitution from entering a final order in non-core matters. Instead, the bankruptcy court may only

---

5. The parties restrict their arguments to debating whether this proceeding should be characterized as core or non-core. The defendants have made no attempt to challenge a "related", as opposed to an "unrelated", characterization of this proceeding.

6. In contrast, the right to a jury trial in core proceedings has been more substantially addressed. *See e.g., In re Kenval Marketing Corp.,* 65 B.R. 548, 550–56 (E.D.Pa.1986); *Mansker v. Campbell (In re Mansker)*, 60 B.R. 803, 806 (D.Mass.1986); *Robinson v. Hinkley (In re Hinkley)*, 58 B.R. 339, 343–46 (Bankr.S.D.Tex.1986).

submit proposed findings to the district court which must, pursuant to Article III, render the final decision on the non-core dispute. Consequently, the unconsented resolution of a non-core matter by a bankruptcy court is entirely nullified by a party's jury demand. Once the jury demand is made, it becomes apparent to both the court and the parties that the findings of fact submitted by the bankruptcy judge will be completely supplanted by the district court jury's verdict. The bankruptcy court's efforts and analysis are reduced to the level of a meaningless academic exercise, having no bearing whatsoever on the dispute's final outcome. *See* R. Aaron, *Bankruptcy Law Fundamentals* § 3.02[5] (1986); 1 *Collier on Bankruptcy* ¶ 301, at 3–88 (L. King 15th ed. 1986). Given such a result, the district court's reference ought to be withdrawn as a matter of course, in the interests of expediency, practicality, economy of judicial resources, and fairness to the bankruptcy judges. 28 U.S.C. § 157(d) (Supp.III 1985). *See UNR Indus. v. Continental Ins. Co.*, 623 F.Supp. 1319, 1333 (N.D.Ill.1985); *Mohawk Indus. v. Robinson Indus.*, 46 B.R. 464 (D.Mass. 1985).

■ This court, therefore, concludes that if the defendants have a right to a jury trial, the reference will be withdrawn, the case will be listed in this court's trial pool, and a jury trial on the non-core matters will be scheduled. The parties, however, have not been afforded the opportunity to completely brief the issue of whether a jury right exists in non-core proceedings. Particularly in light of the dispositive nature of this issue with respect to the pending motion to withdraw reference, the court deems a supplemental briefing appropriate. Each party shall be afforded twenty (20) days from the date of this order to file supplemental briefs. The parties shall restrict their discussions to the question presented and shall not interpret this request as an opportunity to reargue the conclusions reached by the court in this memorandum.

## QUESTION PRESENTED

Does a 28 U.S.C. § 157(c) non-core related proceeding constitute a "suit at common law" within the meaning of the Seventh Amendment? [7]

---

7. In his memorandum, the trustee raised briefly the issue of the nature of the court's jurisdiction to hear the non-core matters. The trustee suggested that if the sole basis for this court's exercise of jurisdiction is 28 U.S.C. § 1334(a)– (b), the proceeding is one at equity and no jury right exists. *See Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966). Further development of this discussion would be helpful.