In re GANDE RESTAURANTS, INC., Debtor.

Bankruptcy No. 93–08111–9P1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Nov. 16, 1993.

Louis X. Amato, Naples, FL, for debtor.

Mary A. Lau, Tampa, FL, for Mariott Family Restaurants, Inc.

## ORDER ON DEBTOR'S MOTIONS TO ASSUME LEASE WITH MARRIOTT RESTAURANTS AND MARRIOTT RESTAURANTS' MOTION FOR RELIEF FROM STAY

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matters under consideration are a Motion to Assume certain non-residential sublease agreements (Subleases) between Marriott Family Restaurants, Inc. (Marriott) and Gande Restaurants, Inc. (Debtor), and an Amended Motion for Relief from Stay or for Adequate Protection filed by Marriott.

In its Motion to Assume the Subleases, the Debtor contends that assumption of the Subleases would be in the best interest of the estate and would help enable the Debtor to successfully reorganize its business. Marriott, on the other hand, contends that the Debtor should not be authorized to assume the Subleases, because (1) the Subleases between the Debtor and Marriott were terminated by Marriott pre-petition and therefore the Debtor's interest under the Subleases are no longer property of the Debtor's estate by virtue of § 541(b)(2) of the Bankruptcy Code; and in the alternative, (2) the Debtor cannot promptly cure the arrearages or provide adequate assurance of future performance as required by § 365(b)(1)(A) and (C). Marriott also seeks an order granting its Motion for Relief from Stay in order to enforce its rights under the defaulted Subleases according to law. The facts relevant to the resolution of these matters are as follows:

In the late 1980's, the Walgreen Company (Walgreen) entered into several commercial leases with a variety of landlords in St. Petersburg, Sarasota, and Naples, Florida, concerning the proposed operation of restaurants in those cities. These restaurants were to operated under the name "Wags." On

August 30, 1988, Walgreen assigned five of the leases to Marriott. In 1991 and 1992, Marriott entered into five separate Subleases with the Debtor. (Marriott's Exhs. 2, 4, 12, 15, 18). The Debtor operated and apparently still operates five "Wag's" restaurants under the Subleases.

In March 1993, the Debtor defaulted not only under the Subleases, but also on its obligation to make the payments required by four Promissory Notes executed in connection with the Subleases. On June 2, 1993, Marriott gave written notice to the Debtor of the defaults by the Debtor on each of the five Subleases and also on the Promissory Notes. (Marriott's Exh. 19). The Notice of Default stated that should the Debtor fail to make full payment within 10 days of receipt of the Notice, Marriott "may, and hereby elects to terminate" each Sublease. Although the record reflects that the Notice had been sent to the Debtor's former business address in Sarasota, the Debtor did receive actual notice of the default, albeit one week later. Be that as it may, it is without dispute that the Debtor did not cure the defaults within 10 days, the time fixed by the Notice. The fact of the matter is, none of the defaults either under the Subleases nor under the Promissory Notes were cured prior to the commencement of the Chapter 11 case and not even as of this date. Prior to the commencement of the case, there were some negotiations between the Debtor and Marriott regarding the defaults, but the parties never agreed to a restructure of the Subleases, or to an extension of the payment schedule under the Subleases.

On July 29, 1993, the Debtor filed its Petition for Relief under Chapter 11 of the Bankruptcy Code. As of August 1, 1993, the Debtor owed Marriott $245,091.60 in past due rent under the Subleases, and $1,665,398.29 in past due principal and interest under the related Promissory Notes.

On August 26, 1993, the Debtor filed its Motion to Assume the Subleases. In the Motion, the Debtor admits that it is in default on the Subleases but claims that it is prepared to pay all post-petition lease payments and $50,000 toward pre-petition defaults, and to treat the remaining pre-petition defaults as general unsecured claims to be dealt with in its Plan of Reorganization to be filed. The Debtor's position is that the Subleases were not terminated and are therefore assumable. The Debtor contends, however, that even if the Subleases were terminated, the right to termination was waived by Marriott based on its negotiations with the Debtor which took place after the Notice of Default was received, and therefore termination does not preclude the Debtor from assuming the Subleases.

In opposition, Marriott contends that the Debtor is not entitled to assume the Subleases because they were effectively terminated by Marriott pre-petition and therefore the Debtor's interest under the Subleases was no longer property of the estate on the date of the commencement of the Chapter 11 case, by virtue of § 541(b)(2). In the alternative, Marriott contends that the Debtor has insufficient funds, is not able to, and has no intention to pay the arrearages and compensate Marriott for the pecuniary losses suffered by Marriott as a result of the default, and that the Debtor is not able to provide Marriott with adequate assurance of future performance under the Subleases, all of which are required by § 365(b)(1)(A), (B), and (C) as conditions precedent to the assumption of a non-residential lease.

The Debtor concedes, as it must, that it does not have the funds necessary to cure the defaults, but in an attempt to obtain the funds to pay post-petition lease payments, it is attempting to enter into post-petition financing with the approval of this Court. The proposed financing is contingent on Marriott's consent to waive its right to immediate payment of all past due rent, to waive the payment for pecuniary losses resulting from the default, and to accept instead an unsecured claim for all past due rent and other pecuniary losses suffered by Marriott in excess of $50,000.00. Under the Debtor's proposal, Marriott would waive over $100,000.00 of accrued interest on the accelerated Promissory Notes and agree to a principal reduction of $300,000.00.

A debtor's right to assume an unexpired lease is governed by § 365 which provides that:

## § 365. Executory contracts and unexpired leases

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

■ By virtue of an amendment to § 541 of the Bankruptcy Code in 1986, the interest of a debtor under a lease of non-residential real property that has terminated prior to the commencement of the case is no longer property of the estate, thus no longer assumable, pursuant to § 541(b)(2). Therefore, before one considers § 365(b), which governs a debtor's right to assume a non-residential lease, it is necessary to determine whether or not the lease was still valid and enforceable under applicable local law at the commencement of the case. Of course, the right of a lessor to terminate the lease is governed by the applicable provision of the lease itself. Paragraph 17 of the Subleases deals with this subject and provides as follows:

*Default.*

a. If (i) Subtenant defaults in the payment of any installment of rent, percentage rent, or additional rent due hereunder, ... and such default continues for ten (10) days after written notice thereof to Subtenant ... then in any of the above events, Sublandlord, at its election, may declare the term of this Sublease ended and, either with or without process of law, re-enter, expel, remove, and put out Subtenant and all persons occupying the Leased Premises under Subtenant, using such reasonable force as may be necessary in so doing, and repossess and enjoy the Leased Premises.

Such reentry and repossession shall not work a forfeiture of the rents to be paid and the covenants to be performed by Subtenant during the full term of this Sublease. (Marriott Exh. 2, p. 11–12) (It should be noted that the default provisions are identical in all the Subleases under consideration.)

■ In the present instance it is without dispute that by March, 1993, the Debtor was in default on all five Subleases, having failed to make the rent payments required by the Subleases. It is equally without dispute that on June 2, 1993, Marriott gave a written notice of the defaults to the Debtor and granted the Debtor ten days to cure the defaults. While the Notice of Default was initially sent only to the Debtor's former business address in Sarasota, it did reach the Debtor, albeit not until one week later. In addition to notifying the Debtor of the defaults, the Notice of Default also informed the Debtor that in the event the defaults are not cured within the ten days fixed by the Notice of Default, Marriott "may and hereby elects to terminate the Subleases." It is without dispute that the Debtor did not make payments within the ten days nor by the time it filed its Petition for Relief on July 29, 1993. It is without dispute that as of August 15, 1993, the Debtor was indebted to Marriott for unpaid rent on the Subleases in the amount of $245,091.60 and $1,665,398.29 on the Promissory Notes it executed in connection with of the Subleases.

Based on the foregoing undisputed facts, one might conclude that the Subleases were effectively terminated prior to the commencement of the Chapter 11 case, thus the Debtor's interest in the Subleases was no longer property of the Debtor's estate, and consequently there remained nothing to assume. Admittedly, the Notice of Default was originally sent to the wrong address, but it is also true that the Debtor did receive the Notice, albeit one week later, and the Debtor had ample time to cure the default and pay all past due rent required by the Subleases, which it failed to do.

Next, at first blush, the Notice of Default appears to be somewhat ambiguous and may

be construed to mean that Marriott "may" terminate the Subleases if the payments are not made, from which, in turn, one might infer that Marriott intends to take further action to terminate the Subleases. However, the Notice also states that the Marriott "hereby elects to terminate." This Court is satisfied that the Subleases did not require any further action on the part of Marriott to terminate the Subleases, and the Subleases were effectively terminated upon the Debtor's failure to cure the default within the time fixed in the Notice. Thus, the Subleases were not property of the estate on the date of the commencement of the Chapter 11 case by virtue of § 541(b)(2), unless this record warrants the finding that Marriott waived its right to termination by not taking steps to enforce its right upon termination of the Subleases, more specifically, causing the eviction of the Debtor from the properties covered by the terminated Subleases.

■ There is some evidence in this record that there were discussions between Marriott and the Debtor even after the Notice of Default, most likely toward finding some mutually acceptable solution. However, it is clear that Marriott never agreed to waive the right to termination, restructure the Subleases, or grant a moratorium to the Debtor and extend the time within which the Debtor would be permitted to make up the delinquent rent payments.

This Court had occasion to consider the issue of waiver of the right of termination by the landlord in a commercial lease in *Matter of Truffles of Sarasota, Inc.*, 30 B.R. 666 (Bankr.M.D.Fla.1983). In *Truffles*, the Debtor asserted as a defense to the landlord's challenge of the Debtor's right to assume a lease which was in default, that the landlord waived the right of termination by its conduct. It is well established that waiver involves the intentional and voluntary relinquishment of a known right or conduct from which waiver can be reasonably inferred. *Fireman's Fund Insurance Co. v. Vogel*, 195 So.2d 20 (Fla. 2d DCA 1967). In addition, where waiver is sought to be established by conduct, ". . . the acts, conduct or circumstances relied upon to show waiver must make out a clear case." *Fireman's Fund Insurance Co. v. Vogel, supra* at 24; *Gilman v. Butzloff*, 155 Fla. 888, 22 So.2d

263 (1945). In the instant case, there is no credible evidence that Marriott ever made an affirmative representation to the Debtor that as a result of their negotiations the Notice of Default would be withdrawn or would be considered to be no longer operative. Just like in *Truffles, supra*, there is no evidence in this record which warrants the finding that Marriott waived its contractual rights, even if the Debtor believed that Marriott did, in fact, waive its rights by its conduct or by its failure to take affirmative steps to regain possession of the premises.

Assuming arguendo that Marriott did waive the defaults and its right to terminate the Subleases, it is clear from this record that this Debtor is unable to comply with the requirements of § 365(b), which sets forth the conditions precedent to assumption of a commercial lease which is in default. First, the Debtor doesn't have the funds to promptly cure the rent arrearages. The Debtor's offer to pay $50,000 toward pre-petition arrearages, which the Debtor doesn't have unless he is authorized to borrow same, is woefully short to pay the delinquent rent which, as of August 1, 1993, was $245,091.60. Moreover, this amount does not include the rent accrued since the commencement of the Chapter 11 case. By virtue of § 365(d), the Debtor is supposed to perform all covenants in the lease sought to be assumed. In addition, there is no question that there is nothing in this record which would support that the Debtor is able to meet the last requirement for assumption, which is to provide adequate assurance of future performance under the Subleases. The Debtor's proposal to obtain the funds necessary through post-petition financing is not less than a pipe dream and utterly lacks any realistic basis, first, because it would not provide sufficient funds to cure the default; and second, the post-petition financing is subject to the consent of Marriott to waive its right to immediate payment of all past due rent payments for the pecuniary losses suffered as a result the default, and most importantly, Marriott's willingness to accept the balance of the unpaid rent merely as an unsecured claim and waive over $100,000.00 accrued interest. In light of the foregoing, there is no doubt that this Debtor has no right to assume the Subleases under consideration.

This leaves for consideration the Motion for Relief from Stay in which Marriott seeks authority to enforce its rights as a landlord and evict the Debtor from the premises. In light of the conclusion of this Court, it is evident that the Motion for Relief from Stay is well taken and should be granted with certain provisos.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion to Assume Lease Agreements filed by the Debtor is hereby denied. It is further

ORDERED, ADJUDGED AND DE-CREED that the Motion for Relief from Stay filed by Marriott is hereby granted with the proviso that the Debtor shall be given fourteen (14) days from the date of entry of this Order to surrender the premises in an orderly fashion, but may not seek an in personam money judgment against the Debtor in a non-bankruptcy forum, if it elects to proceed to enforce its right as Sublessor under applicable local law. It is further

ORDERED, ADJUDGED AND DE-CREED that Marriott may file a proof of claim, if any, if so deemed to be advised within thirty (30) days from the date of entry of this Order.

DONE AND ORDERED.